## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

_____
                                          )
THE ANTHEM GROUP, Inc.                    )
      Plaintiff                          )          Case No.
                                          )
v.                                        )
                                          )
EVERYTHING ICE, INC.                      )
      Defendant                          )
_____)

## **COMPLAINT**

NOW COMES the Plaintiff, The Anthem Group, Inc., and for its cause of action against Defendant, Everything Ice, Inc., alleges that:

## **PARTIES**

1.      Plaintiff, The Anthem Group, Inc. (hereinafter "Plaintiff" or "Anthem Group"), is a Massachusetts corporation with a principal place of business at 600 Salem Street, Suite 307, Wakefield, Middlesex County, Massachusetts.

2.      The Anthem Group, Inc. is the successor in interest and the assignee of Sinclair Media, Inc. d/b/a Anthem Group.

3.      Defendant, Everything Ice, Inc. (hereinafter "Defendant" or "Everything Ice"), is a Pennsylvania corporation with a principal place of business believed to be located at 115 School Street, Salix, Cambria County, Pennsylvania.

## **JURISDICTION**

4.      Plaintiff brings its complaint under federal diversity jurisdiction, 28 U.S.C. § 1332, as the parties are completely diverse in citizenship and the amount in controversy exceeds $75,000.00.

## FACTS

5.      Christopher Sinclair (hereinafter "Sinclair") is the President of Anthem Group and was formerly the President of Sinclair Media, Inc. d/b/a Anthem Group.

6.      Michael Kirby (hereinafter "Kirby") is an authorized agent of Anthem Group and was formerly an authorized agent of Sinclair Media, Inc. d/b/a Anthem Group.

7.      John S. Burley (hereinafter "Burley") is the President of Everything Ice.

8.      Jon Knobloch (hereinafter "Knobloch") is Vice President of Sales and Marketing for Everything Ice and at all times material herein was an authorized agent of Everything Ice.

9.      In August 2014, Burley traveled from Pennsylvania to Boston, Massachusetts, and met with Sinclair.  Anthem Group was in the process of developing a proposal to put an ice rink, among other amenities, at City Hall Plaza in Boston and was considering contracting with Everything Ice to build the rink.  Anthem Group's proposed project for City Hall Plaza was to be called "Winter's Landing."[1]

10.      While Burley was in Boston, he and Sinclair walked the site of the proposed ice rink, looked at plans, and discussed the initial framework of an agreement for Everything Ice to build the ice rink.

11.      Over the next several months, discussions between Anthem Group and Everything Ice progressed.  On November 25, 2014, Knobloch indicated in an email to Kirby of Anthem Group that Everything Ice would require a signed contract and a deposit to allow Everything Ice to purchase tubing[2] and dasher boards for the rink.[3]

---

[1] The City of Boston eventually awarded a contract to build an ice rink and associated holiday market to Delaware North Companies, Inc.., which has since opened the venue at City Hall Plaza under the name "Boston Winter."
[2] Rink tubing, also known as "rink piping," is laid beneath the ice on a rink.  Its role is to remove heat from the ice.
[3] Dasher boards are the boards that surround an ice rink, thereby enclosing the rink.

12.     In a subsequent email to Kirby on November 25, 2014, Knobloch indicated that Everything Ice would accept a deposit of forty percent of the cost of the rink tubing system and the dasher boards.   Specifically, Everything Ice requested $60,699.00 for the rink tubing and $84,666.00 for the dasher boards, for a total deposit of $145,365.00.

13.     Around this time, Anthem Group was in negotiations with the City of Boston (hereinafter "City") to obtain the necessary permits, licenses, and leases to do business as Winter's Landing.   The Plaintiff and Defendant agreed, in conversations between Kirby, Burley, and Knobloch, that if the project were to be canceled due to permitting or lease issues with the City, the unused funds would be returned to Anthem Group and Everything Ice would sell any materials it purchased and return the proceeds to Anthem Group.   Knobloch confirmed as much, when he wrote in an email to Kirby on November 28, 2014, "In the event that permits are not finalized, we will work with anthem to find opportunities to liquidate the materials."

14.     On November 28, 2014, Anthem Group received a standard form written proposal from Everything Ice dated November 29, 2014.   However, the proposal did not provide for the $145,365.00 deposit as agreed by Knobloch and Kirby.   Rather, the proposal provided for a deposit of $201,413.60.   In addition, the proposal did not set forth the entire agreement of the parties, based on email and oral communications, that if Anthem Group could not obtain the required permits or leases, Everything Ice would refund unused portions of the deposit to Anthem Group and would attempt to sell any materials that had already been purchased.   Finally, the proposal contained several additional terms that were either not agreed to or were irrelevant to the transaction.   Anthem Group never executed the proposal, but confirmed the agreed purchase price and deposit.

15.     On November 28, 2014, Kirby wired to Everything Ice the deposit of $145,365.00.

16.     On December 2, 2014, two business days following the wire, Anthem Group contacted Everything Ice and told Everything Ice to stop any and all work related to construction and/or purchasing for the Winter's Landing project, as Anthem Group had encountered significant and unforeseen permitting and leasing issues with the City in that short period of time.

17.     Burley subsequently indicated to Kirby that he was traveling at the present time, and that Everything Ice would therefore require approximately one week before it could discuss a refund with Anthem Group.

18.     On December 10, 2014, Knobloch responded to Anthem Group by email, asking Kirby, "Can you please respond to this email outlining the issues that took place with the cancellation of the order, and what your intentions are for the rink in the future?"

19.     After Kirby responded with an explanation of the permitting issues, copying Burley and Tim Elgin of Everything Ice on the email, Burley replied in his own email on December 10, 2014, "Certainly our expense did not consume all of your initial investment.  I can wire you back a partial right away while I figure this out if it would make you feel better."

20.     On December 15, 2014, Burley proposed three options to Anthem Group for dealing with equipment that had already been purchased for the project.  One of the options proposed that "[Anthem Group] [t]ake [a] $70,000 hit and Everything Ice will assume the obligation to liquidate dashers and other materials.  EI will wire the $73,000 back immediately for a full signed release."  Through the wording of this email, Burley indicated that Everything Ice had spent only $70,000.00 on equipment, and Anthem Group was entitled to a refund of at least $73,000.00 of the deposit.

21.     Also on December 15, 2014, Burley sent another email to Kirby stating "we are into this for all of the $70,000."

22.     Later on December 15, 2014, Everything Ice wired $23,000.00 to Kirby as the partial refund of the deposit.  Taking at face value Burley's statement that Everything Ice had already expended $70,000.00 on equipment, Everything Ice would have at that point been holding $52,365.00 in unused funds out of the deposit.

23.     Later correspondence subsequently indicated that Everything Ice in fact retained more than $52,365.00..

24.     Specifically, in an email on February 6, 2015, Burley stated to Kirby, "The tubing was raw material we were able to just use in the next rink we were building."  Because Everything Ice was able to sell the rink tubing to another customer, it either suffered no loss as a result of its procurement of the tubing materials for the Winter's Landing project (and may in fact have earned a profit) or was able to recoup a portion of its expenditures.  According to the agreement between Anthem Group and Everything Ice, the proceeds from the resale of the rink tubing should be returned to Anthem Group, to the extent they cover Everything Ice's initial expenditure on the tubing.

25.     On or about July 6, 2015, Burley sent a letter to Anthem Group, which indicated that the cost of Everything Ice's purchase of the dasher boards was only $48,000.00, plus $10,000.00 for the shipment of the dasher boards.

26.     Allowing for Everything Ice's unverified expenditure of $58,000.00 to acquire the dasher boards, Everything Ice is retaining $64,365.00 of Anthem's deposit.  Further, Everything Ice had agreed that if the project were canceled due to permitting or leasing issues, Everything Ice would endeavor to sell the purchased dasher boards (and other equipment) to a third party, with the proceeds going to Anthem Group.  This has not happened, as to the dasher boards.

27.     Despite requests from Anthem Group, Everything Ice has refused to provide invoices or other documentation of the costs of the rink tubing and dasher boards, and has refused to return the balance of the aforesaid deposit.

## COUNT I: BREACH OF CONTRACT

28.     Anthem Group re-asserts and re-alleges paragraphs 1 through 27 herein.

29.     By retaining at least $64,365.00 of Anthem Group's deposit and by failing to resell the dasher boards and remit the proceeds to Anthem Group, Everything Ice has materially breached its contract with Anthem Group.

30.     By failing to refund to Anthem Group the proceeds from its purported sale of the rink tubing to another customer, Everything Ice has materially breached its contract with Anthem Group.

31.     As a direct result of Everything Ice's breach, Anthem Group has suffered damages as described herein.

## COUNT II: QUANTUM MERUIT

32.     Anthem Group re-asserts and re-alleges paragraphs 1 through 31 herein.

33.     Anthem Group paid a deposit of $145,365.00 to Everything Ice based on the reasonable expectation that if the Winter's Landing project did not move forward as a result of permitting or lease issues, Everything Ice would refund Anthem Group unused portions of the deposit and would attempt to sell any materials it had already purchased, with proceeds being returned to Anthem Group.

34.     Anthem Group reasonably relied upon representations made by Everything Ice that it would refund unused portions of the deposit and attempt to sell purchased rink tubing and/or dasher boards, in the event the project was not approved due to permitting or lease issues.

35.     By retaining the deposit, less $23,000.00, for goods and services that it never provided to Anthem Group, Everything Ice has been unjustly enriched, to the detriment of Anthem Group.

36.     By retaining the dasher boards, which it purchased using Anthem Group's funds, Everything Ice has been unjustly enriched, to the detriment of Anthem Group.

## COUNT III:  BREACH OF G.L. c. 93A § 11

37.     Anthem Group re-asserts and re-alleges paragraphs 1 through 36 herein.

38.     Anthem Group and Everything Ice are business entities engaged in commerce.

39.     Despite requests from Anthem Group, Everything Ice has failed to provide invoices or other evidence of the amount it expended from Anthem Group's deposit on rink tubing and dasher boards for the Winter's Landing project.

40.     By failing to disclose its true costs for rink tubing and dasher boards, Everything Ice has intentionally concealed the amount of the deposit that is owed to Anthem Group.

41.     Everything Ice refuses to provide invoices or other evidence of its actual expenditures, or any records or information regarding its sale of the same goods to an unrelated third party.

42.     Everything Ice has refused to explain to Anthem Group exactly what work it performed, or costs it expended, between November 28, 2014 and December 2, 2014.

43.     The above acts and omissions by Everything Ice constitute unfair or deceptive practices.

44.     The transaction between the parties took place primarily in Massachusetts.

45.     As a result of Everything Ice's unfair and deceptive acts and practices, Anthem Group has incurred damages.

WHEREFORE, the Plaintiff, Anthem Group, demands judgment against the Defendant in an amount to be determined at bar, including costs and attorneys' fees, and such other relief this Honorable Court deems just and equitable.

**PLAINTIFF DEMANDS TRIAL BY JURY ON ALL ISSUES AS PERMITTED BY LAW.**

Respectfully submitted,
PLAINTIFF,
By its attorneys,

DATED:  January 27, 2017

/s/ David R. Lucas
David R. Lucas, BBO# 636850
Lucas Law Group, LLC
One Nelson Terrace, Suite D
Melrose, MA 02176
(781) 665 - 2200
dlucas@LucasLawGroupLLC.com